The State v. Otey.

---

THE STATE OF KANSAS v. SCION M. OTEY.

1. EVIDENCE—*Witness; cross-examination.* When a witness on the direct examination has testified that another person, at a certain time, had a certain private disease, and when it is material for the adverse party to show that said disease was contracted prior to the time stated by the witness, he may do so by a cross-examination of the same witness.

2. ——— And in such case the question may be put in the following form: "State, if prior to this occurrence, the girl (naming her) had suffered from any private disease." Wide latitude is allowed in cross-examinations.

3. INFORMATION—*Practice—Waiver.* Objections that an information is not properly verified, are waived by pleading to the merits, and going to trial.

4. VERDICT—*Sufficiency of.* A verdict finding a defendant "guilty of an attempt to commit a rape." need not state that the defendant did some act toward the commission of the offense.

*Appeal from Douglas District Court.*

THE defendant was charged by information with hav-
ing committed the crimes of assault and rape. The informa-
tion stated, " That on the 4th day of May, 1870, at Douglas
county, he, defendant, committed an assault, and then
and there carnally knew one Anna M—— B——, a female
child under the age of ten years." The information was
not verified by affidavit of the county attorney, or com-
plainant; but the defendant, on being arraigned for plea,
pleaded " not guilty," and the case went to trial, and was
tried at the November Term, 1870.

When the complaining witness, the said Anna M——
B——, was called as a witness the defendant objected,
alleging that she was clearly incapacitated. She was
examined by the court; she stated she didn't know the
nature of an oath; nor the day of the week; nor the
number of days in a week; but she did state, " that if a
person tells a lie they will go to the bad place." The
court permitted her to be sworn, and she testified that
the defendant had carnal knowledge of her person in
the month of May, 1870, in said county. The girl's
mother, Nancy J. B., testified that the girl was under
ten years of age; and that defendant boarded at her
house at and before the time the offense was alleged to
have been committed. A portion of the evidence given
by this witness over defendant's objection, and some of
the questions asked on cross examination and excluded,
will be found in the opinion of the court. The witness
having given testimony showing that defendant had a
private disease, and that after the alleged rape the girl
was infected with the same disease, the defendant, on
cross-examination, showed that mother and daughter had
slept together, and offered to show by the witness, the

girl's mother, " that she, the mother, was affected with a disease at the time she slept with the girl *Anna* M. B., which she might have communicated to the girl, and which disease developed the same symptoms as those developed in the child." This testimony was objected to by the State and excluded, and defendant excepted. It is not deemed necessary to set forth the charge of the court, nor the instructions asked and refused. The jury returned a verdict in the following words :

" We the jury find the defendant guilty of an attempt to commit a rape upon the person of Anna M—— B——, . mentioned in the information."

Motions for new trial, and in arrest of judgment over-ruled, and judgment on the verdict. Defendant appeals to this court.

*Thacher & Banks*, for appellant :

1. The witness Anna was not of sufficient age and capacity to testify as a witness. The oath to her was a mere form without meaning. The witness must know and feel the binding obligation of an oath from the general course of religious education. The effect upon the *conscience* should arise from religious feeling of a permanent nature. It is not sufficient that she says, If she tell a lie she will go to hell. *Rex v. Williams*, 7 Carr. & Payne, 320. *People v. McNair*, 21 Wend., 607.

Shall a person's liberty be jeopardized by the tale of a mere child, incapable of knowing right from wrong? The law requires that a moral and religious accountability be felt to a Supreme Being, before it permits a person to testify. 1 Greenl. Ev., § 471.

2. The court erred in allowing the girl's mother to testify that " after this transaction the girl was affected with disease, of a private nature." Such testimony

would only be legitimate in view of the inference that the discharges resulted from the improprieties of the defendant, and hence inferentially corroborating the statement of the prior witness ; and this is too remote.

But having admitted such testimony the court certainly erred in refusing to allow the defendant to show on cross-examination that the girl's mother was diseased, and that while the two witnesses slept together such disease could be communicated to the girl, and if she had a disease she took it from her mother. It was competent to go to the jury. It was of the same nature as that given by the prosecution against the defendant. The question was proper. The defendant was entitled to the proof, and to exclude it was error. So too in regard to the other question refused by the court.

3. The court erred in overruling the defendant's objection to the question put to Dr. Y. as to what disease, if any, he found upon the witness Anna M. B. The fact of her being diseased on the 12th day of *June* should raise no presumption against defendant. The time of the commission of the pretended crime, fixed by the prosecution, was the fore part of *May.*

4. The court erred in his instructions to the jury. The charge of rape upon a person under ten years of age does not include an assault. The offense does not include an assault, even though an assault be alleged. *Regina v. Banks,* 8 Carr. & Payne, 574; *Regina v. Meredith,* id., 589 ; 2 Carr. & Kirw., 957.

5. The motion for a new trial should have been sustained. The verdict is so defective as not to authorize any judgment to be entered upon it. The verdict finds the defendant guilty of an attempt to commit, etc. This does not comply with the provision of § 283 of ch. 31,

relative to crimes and punishments. It does not find that he "did some act toward the commission of the offense." There is nothing by which the court can determine that a *crime* has been committed. It may have been some harmless act, not injuring any one, nor punishable by law. 8 Carr. & Payne, 574, 589.

Neither is the finding good under § 41 of said statute, as no assault is alleged by the finding. Gen. Stat. 1868, p. 325.

6. The court erred in overruling the motion of defendant in arrest of judgment. The information never had a legal inception. It was the unauthorized act of a volunteer.

The statute authorizes proceedings by information on the motion of the county attorney. It is a superseding of the functions of a grand jury, and nothing less than a strict compliance with the law should be held sufficient.

Again, the information is not verified. The affidavit of Geo. P. Barker is no verification within the statute. (Crim. Code., § 67.) It is required that the information be verified by the prosecuting attorney, complainant, or some other person; evidently intending to provide for a verification by a person cognizant of the facts, or on the information and belief of a person properly informed.

*A. L. Williams*, Attorney General, for The State :

1. The prosecuting witness was competent because she knew enough to satisfy both the theologian and the lawmaker; she knew that if she lied she would go to jail here, and to the bad place hereafter.

Cases of this kind necessarily rest upon the particular circumstances of the individual case, and no generalization of the law can afford a safe rule to govern all cases.

The State v. Otey.

The books abundantly show this. A careful examination of the authorities will show that the two rules—the ancient and the more modern one—would seem to be— *first:* That a witness is competent to testify if he believes in the being of a God, and that divine punishment will be the certain consequence of perjury; And *second:* He is a competent witness if he is capable of distinguishing between good and evil, and knows the nature of an oath. 1 Phillips on Ev., pp. 2 to 7; 1 Greenl. on Ev., § 367; 10 Michigan, 372.

2. The question put to the girl's mother respecting herself was properly ruled out for two reasons; it was not proper cross-examination; and the testimony does not show that the child was in the habit of sleeping with her mother.

So too was the question respecting the time when the girl was diseased. It was neither proper cross-examination nor re-cross-examination; and the reason assigned by counsel for wanting to prove the fact in question by a witness for the prosecution presents the novel spectacle of a party desiring to prove an affirmative fact essential to his defense, by a witness whom he will not make his own because he intends to impeach her character for truth and veracity.

3. Our statute (p. 323, § 31) makes it an assault to rape a child under ten years of age. Even if it were otherwise, the instruction of the court worked no injury to defendant as the jury did not find him guilty of "an assault with intent to commit a rape." See 8 Carr. & Payne, 383, 392; also note *b*, p. 372.

4. If the county attorney, or any one recognized by the court as acting county attorney, appeared and prosecuted, it is immaterial whether the proper officer wrote

the information or had it done.   The information shows
all the jurisdictional facts on its face.   Even if this were
not sufficient, the error, if any, cannot be taken advan-
tage of by motion in arrest of judgment.   A plea in
abatement should have been filed.

The question as to whether the information was prop-
erly verified is a more serious one; but whether well
verified or not the objection comes too late, after a plea
in bar.   It should have been made by plea in abatement.

5.  The verdict is good.   It is no more requisite to find
a person guilty of an attempt to commit a crime to state
in the verdict that the defendant "did some act toward
the commission of a crime," than it would be in a con-
viction of an assault with intent to commit rape, to set
forth the facts and circumstances constituting the assault.

The opinion of the court was delivered by

VALENTINE, J.:  The defendant was charged in the
court below with the commission of an assault and a rape
upon a female child under the age of ten years.   He was
tried by a jury who found the following verdict:   "We
" the jury find the defendant guilty of an attempt to com-
" mit a rape upon the person of Anna M—— B——,
" mentioned in the information."   The defendant moved
for a new trial, and in arrest of judgment, both of which
motions were denied by the court, and he was sentenced
to ten years imprisonment in the penitentiary.   From this
sentence and the judgment of the court below the de-
fendant appeals.

During the trial, Nancy J. B., the mother of the pros-
ecuting witness was examined on the part of the prose-
cution.   During her direct examination she
testified among other things as follows:

1. Evidence:
Witness:
examination.

"*Question :* After this transaction (the alleged rape) was the girl affected with any disease? and had she any discharge of a private nature from her person? This question was objected to by the defendant as incompetent and immaterial; but the court overruled the objection, whereupon the defendant duly excepted. *Answer :* She was."

"*Question :* State if after this transaction you observed any discharge? what was the color, and from whence did it proceed? This question was objected to by the defendant as irrelevant, incompetent, and immaterial, but the court overruled the objection, whereupon the defendant duly excepted. *Answer :* There was a discharge of blood upon the underclothing. After this I observed other discharges. Ten or twelve days later I noticed a white and green discharge. The first was sort o' mixed with blood; and after that it was green and white. I called Doct. T—— the fore part of June; and afterwards Doct. Y—— was called; Doct. Y. was called about the 6th of June; afterwards, about the 12th of June, Doct. P—— was called. Y——, T——, and P—— treated her." The witness also testified that she found medicines, a brush and a syringe in the defendant's trunk.

"On cross-examination the defendant's counsel asked the witness the following questions: State if prior to this occurrence the girl Anna M—— B—— had suffered from any private disease? This question was objected to as not proper matter of cross-examination, and the objection was sustained and the evidence excluded, whereupon the defendant excepted."

The physicians testified that the disease that the prosecuting witness, Anna M—— B——, had was gonorrhea. The physician, F. Morse, testified that he treated the defendant for gonorrhea in *April*, 1870. The evidence shows that the alleged offense, if committed at all, was committed in *May*, 1870. The evidence also tended to show that brushes and syringes, such as were found in the defendant's trunk, are sometimes used in the treatment of gonorrhea.

The said evidence of Nancy J—— B—— was undoubtedly introduced by the prosecution upon the theory that the girl *Anna* M. B. was afflicted with gonorrhea which she had contracted from the defendant at the time of the alleged rape; for upon no other theory could the evidence be competent. In proof of this theory Nancy (the mother,) testified that after said alleged rape the girl had a disease of a private nature; and the defendant by cross-examination desired to show that the girl also had the said disease before that time. We know of no reason why he should not have been allowed to show it. No question was raised in the court below, and none has been raised here, as to whether the defendant had waived his right to cross-examine upon this matter, and there is nothing in the record that shows that he had waived such right. It was claimed by the prosecution in the court below, and was so decided there, that the matter about which the defendant asked the question, was "not proper matter of cross-examination." We think that the court erred. The witness had testified concerning the disease; and the defendant had a right to know by cross-examination *when* the disease originated. If it was contracted before the alleged rape, it certainly was no evidence against the defendant. If the girl had gonorrhea at any time, it was very material to know when she contracted it.

No valid objection can be urged to the form of the question as the defendant's counsel put it. It is true that the question does not refer in explicit language to the disease that the witness had already testified about; but such is not necessary in cross-examination. Wide latitude should be allowed in cross-examination in any case, and particularly so in a case of this kind, where sufficient facts had already ap-

2.——Cross-examination: wide latitude allowed.

peared to show that the character of the witness was not of the best kind.   We also think that any question on cross-examination of the girl's mother that would have elicited evidence tending to show that the girl contracted the disease from the witness herself, while sleeping with said witness, would have been a proper question.

We think there is enough in the record to show that the information was filed and prosecuted by proper authority.   The defendant waived the supposed irregularity in the verification by pleading to the merits, and not moving to quash, nor pleading in abatement.

3. Information: irregularity— waiver.

We are not able to say that the charge of the court to the jury is sufficiently erroneous to warrant a reversal of the case for that reason.   The principal objection that might be urged against it is that a very large portion of it is irrelevant, having no application to this case.

We think the form of the verdict is sufficient.   It is not necessary that the verdict should state that the defendant did some act toward the commission of the offense.   We should judge from the preliminary examination by the judge of the court and the testimony of the witness Anna M. B., (taking all together,) that she was a competent witness.

4. Verdict: form of: what sufficient.

The judgment of the court below is reversed and a new trial ordered.

All the Justices concurring.